T.C. Summary Opinion 2017-45

UNITED STATES TAX COURT

JOANNA KLUBO-GWIEZDZINSKA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16501-15S.                    Filed June 28, 2017.

Joanna Klubo-Gwiezdzinska, pro se.

<u>Rachel L. Rollins</u>, for respondent.

SUMMARY OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1] Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in, and accuracy-related penalties on, petitioner's Federal income tax for 2010 and 2011:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2010 | $7,400 | $1,400 |
| 2011 | 7,644 | 1,529 |

After concessions by respondent,[2] the issue for decision is whether payments that petitioner received during 2010 and 2011 from Washington Hospital Center are exempt from Federal income tax under the Convention For The Avoidance Of Double Taxation And The Prevention Of Fiscal Evasion With

---

[1] Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code, as amended and in effect for the taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts have been rounded to the nearest dollar.

[2] Respondent concedes that: (1) a $1,000 prize awarded to petitioner from the Endocrine Society in 2010 is not taxable and (2) petitioner is not liable for the accuracy-related penalty for either of the years in issue. Respondent contends that he erred in the notice of deficiency by allowing petitioner an exemption of $2,000 for each of the years in issue under Article 18(1)(b)(iv) of the U.S.-Poland income tax treaty (referred to infra in the text as the Convention); however, respondent does not seek to undo that allowance by asserting increased deficiencies.

Respect To Taxes On Income, Pol.-U.S., October 8, 1974, 28 U.S.T. 891 (entered into force July 22, 1976) (Convention).

Background

Some of the facts have been stipulated, and they are so found. The Court incorporates by reference the parties' stipulation of facts and the accompanying exhibits.

Petitioner resided in the Commonwealth of Virginia at the time that the petition was filed with the Court.

Petitioner was born in Poland and is a Polish citizen. She is highly educated, having earned both a medical degree and a Ph.D. degree in Poland. For most of petitioner's medical and professional career her focus has been on thyroid cancer. Petitioner is well respected in her field of expertise, and she has often been recognized for her work.

At all relevant times petitioner was (and continues to be) a member of the Endocrine Society, an international organization whose membership consists principally of medical doctors, scientists, researchers, and educators in the field of endocrinology and metabolism. Among other things the Endocrine Society, through the International Endocrine Scholars Program, helps to connect "the world's brightest young endocrinologists with unparalleled research positions at

top institutions outside of their home countries."[3]  It was through this scholars program that petitioner met Leonard Wartofsky, Chairman of the Department of Medicine at Medstar Washington Hospital Center in Washington, D.C.

Washington Hospital Center Corp., which does business as Medstar Washington Hospital Center (Washington Hospital Center), is a nonprofit U.S. corporation that is exempt from income tax under section 501(c)(3).  Washington Hospital Center has some 912 hospital beds[4] and is "dedicated to delivering exceptional PATIENT FIRST health care".[5]  It is "the busiest and largest hospital in Washington, D.C. and the surrounding area", with approximately 500,000 inpatient and outpatient visits per year by individuals from throughout the Mid-Atlantic area, and "serve[s] as referral center and the central hub for the region's most advanced acute medical care", with "[n]ationally respected programs in * * * cancer, diabetes and endocrinology," among other specialized areas.[6]

---

[3] See http://www.endocrine.org/awards/student-and-early-career-awards/international-endocrine-scholars-program

[4] See https://www.medstarwashington.org/our-hospital/.

[5] See https://www.medstarwashington.org/our-hospital/mission-vision-and-values.

[6] See https://www.medstarwashington.org/our-hospital/.

In February 2009 Dr. Wartofsky wrote a letter to petitioner offering her a position as a Research Fellow at Washington Hospital Center. The letter stated:

> It is my great pleasure to inform you that you have been awarded a position as a Research Fellow in Endocrinology in the Division of Endocrinology and Metabolism of the Department of Medicine, Washington Hospital Center in Washington, D.C. The training program appointment is effective 15 February 2009 for a period of one year[], ending on February 14, 2010 with a[n] opportunity for renewal for both an additional second and third year. Your focus of activity will be in the area of translational thyroid cancer research, and the stipend will be for $48,000 plus benefits.
>
> This will be a fully salaried and supported position * * *. You will be eligible for appointment to the faculty of the Georgetown University School of Medicine at the rank of Assistant Professor of Medicine.

Petitioner accepted the position with Washington Hospital Center, and on March 1, 2009, she entered the United States on a J-1 visa under the Exchange Visitor Program.[7]

On April 9, 2009, petitioner entered into a "House Staff Agreement" (HSA) with Washington Hospital Center. The HSA provided in relevant part:

> IN CONSIDERATION of the mutual promises contained in this Agreement and intending to be legally bound, the Hospital and the House Staff Member [i.e., petitioner] agree as follows:

---

[7] "The Exchange Visitor (J) non-immigrant visa category is for individuals approved to participate in work- and study-based exchange visitor programs." https://j1visa.state.gov/basics. The J-1 visa is for the exchange visitor; the J-2 visa is for the spouse and dependents of the J-1 visa holder.

1. <u>TERM</u>.  This Agreement shall be binding upon the parties beginning 4/1/09 and ending 3/31/10.

\*          \*          \*          \*          \*          \*          \*

5.  <u>SALARY AND BENEFITS</u>.  During the term of this Agreement, the House Staff Member shall earn a salary of $51,000.  Payments shall be made in equal installments on a biweekly basis.  The Hospital further agrees to provide the House Staff Member with the following benefits:

5.1 PROFESSIONAL & GENERAL LIABILITY COVERAGE FOR ACTS WITHIN THE SCOPE OF THE PROGRAM (REGARDLESS OF WHEN A CLAIM IS FILED).
5.2 PAID TIME OFF (including vacation, sick or personal time)
5.3 HEALTH INSURANCE
5.4 DISABILITY INSURANCE
5.5 FAMILY OR MEDICAL LEAVE OF ABSENCE
5.6 OTHER LEAVES OF ABSENCE
5.7 MEALS, LAUNDRY, & CALL QUARTERS
5.8 COUNSELING, IMPAIRED PHYSICIAN & OTHER SUPPORT SERVICES

\*          \*          \*          \*          \*          \*          \*

6.  <u>OBLIGATIONS OF THE HOUSE STAFF MEMBER</u>.  House Staff Member agrees to comply with the general and specific obligations, responsibilities and requirements of the Hospital and the Program, including, without limitation:

6.9 At the time of expiration or in the event of termination of this Agreement, House Staff Member shall return all Hospital property, complete all medical records and settle all professional and financial obligations with the Hospital.

13. <u>TERMINATION</u>.  This Agreement may be terminated by the parties as follows:

\*          \*          \*          \*          \*          \*          \*

13.2 By the Hospital, effective immediately upon delivery of written notice by the Program Director to the House Staff Member, for any legitimate reason, which may include, without limitation, failure to maintain satisfactory academic progress, workplace misconduct, unprofessional behavior, endangerment of the health or safety of others, including co-workers, patients or other parties.

Petitioner successfully renewed her contract with Washington Hospital Center for two additional one-year periods, at a salary of $53,500 under the second contract and at a salary of $56,200 under the third contract.

As a Research Fellow at Washington Hospital Center petitioner worked at least 40 hours a week during the years in issue researching thyroid cancer. Petitioner also gave presentations on her research, and her findings appeared in various medical publications and journals.

Washington Hospital Center sent petitioner Forms W-2, Wage And Tax Statement, reporting that she received "Wages, tips, other compensation" of $49,502 in 2010 and $51,795 in 2011.  On both the 2010 and 2011 Forms W-2 Washington Hospital Center checked the box indicating that petitioner was covered by a retirement plan.

On May 2, 2011, petitioner filed a Form 1040NR-EZ, U.S. Income Tax Return For Certain Nonresident Aliens With No Dependents, for 2010. On page 2 of the Form 1040NR-EZ petitioner disclosed that she was a citizen and resident of Poland. Also on page 2 petitioner claimed that her income of $49,502 was exempt from Federal income tax under Article 18, Students and Trainees, of the Convention.

Petitioner timely filed a Form 1040NR-EZ for 2011. On page 2 of the Form 1040NR-EZ petitioner again disclosed that she was a citizen and resident of Poland. Also as before, on page 2 petitioner claimed that her income of $51,795 was exempt from Federal income tax under Article 18 of the Convention.

On its publicly available Form 990, Return Of Organization Exempt From Income Tax, for its fiscal year ended June 30, 2011, Washington Hospital Center is not a school described in section 170(b)(1)(A)(ii) but rather a hospital described in section 170(b)(1)(A)(iii). On that form Washington Hospital Center reported total revenue of $1.145 billion, of which $1.109 billion was "program service" revenue, with the latter amount consisting of the sum of "patient service revenue" of $1.102 billion and "pharmacy" of $7 million (i.e., $0.007 billion). Other revenue sources included (but were not limited to) nongovernmental contributions, gifts, and grants of $7 million. Insofar as expenses were concerned, Washington

Hospital Center reported on its Form 990 that it employed 7,551 individuals in 2010 and paid compensation and benefits of $587 million. In contrast, Washington Hospital Center reported that it gave no monetary (i.e., zero) grants or other assistance to individuals.[8]

In March 2015 respondent sent petitioner a notice of deficiency. As relevant, respondent determined that petitioner received taxable income of $47,502 and $49,795 for 2010 and 2011, respectively, that was not exempt from Federal income taxation.[9]

In response to the notice of deficiency petitioner filed a timely petition for redetermination with the Court, alleging that her income from Washington Hospital Center was exempt from Federal income taxation pursuant to Article 18 of the Convention. At trial and in her posttrial brief petitioner alleges as an

---

[8] Washington Hospital Center's Form 990 for its fiscal year 2011 covers only six months of each of the two calendar years at issue in the instant case. However, the reporting on Washington Hospital Center's Forms 990 for its fiscal years 2010 and 2012 is comparable to the reporting on its Form 990 for its fiscal year 2011. In particular, Washington Hospital Center reported on all three Forms 990 that it gave no monetary grants or other assistance to individuals.

[9] In the notice of deficiency respondent allowed an exemption of $2,000 for each of the two years under Article 18 of the Convention. However, as previously noted, see supra note 2, respondent contends that he erred in that regard but has not asserted an increased deficiency for either year.

alternative ground that the income was also exempt pursuant to Article 17, Teachers, of the Convention.

## Discussion

In general, the Commissioner's determination in a notice of deficiency is presumed to be correct, and the taxpayer bears the burden to show otherwise. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933). Although the burden may shift to the Commissioner under section 7491(a) if certain requirements are satisfied, petitioner has not alleged that the section applies, and the record does not support its applicability.

## I. Governing Statutory Framework

Under the general rule of section 871(b), a nonresident alien individual (such as petitioner) who is engaged in a trade or business in the United States is subject to U.S. income tax on the individual's taxable income effectively connected with the conduct of that trade or business. Ordinarily, an individual who performs personal services within the United States at any time during the taxable year conducts a "trade or business within the United States". Sec. 864(b). Consequently, a nonresident alien who receives compensation for the performance of personal services in the United States has income effectively connected with the

conduct of a trade or business in the United States and therefore has gross income under the Internal Revenue Code. See secs. 864(c)(1)(A), (2), 871(a)(1)(A); sec. 1.864-4(c)(6)(ii), Income Tax Regs.; see also sec. 61(a)(1). However, under section 894(a), the Internal Revenue Code is applied to any taxpayer with due regard to any treaty obligation of the United States that applies to that taxpayer. An applicable treaty obligation can therefore alter an individual's income tax liability under the Internal Revenue Code.

## II. The United States-Poland Income Tax Treaty

As previously stated, the United States is party to an income tax treaty with Poland, i.e., the Convention. See supra pp. 2-3. Petitioner contends that the payments that she received in 2010 and 2011 from Washington Hospital Center are not taxable income to her pursuant to either Article 17 or Article 18 of the Convention. Respondent contends that petitioner fails to qualify for the benefits under either of those articles. As discussed below, the Court agrees with respondent.

The interpretation of treaty provisions must begin with the wording of the treaty. N.W. Life Assurance Co. of Can. v. Commissioner, 107 T.C. 363, 378-379 (1996). The role of the judiciary in interpreting treaty provisions is to decide their underlying intent or purpose. Estate of Silver v. Commissioner, 120 T.C. 430, 434

(2003).  The Court therefore begins its analysis by examining the Convention

itself.  Article 18 is considered first because it has been petitioner's principal focus

throughout this proceeding.

A.  Article 18

The pertinent part of Article 18, Students and Trainees, provides as follows:

1(a) An individual who is a resident of one of the Contracting States at the time he becomes temporarily present in the other Contracting State and who is temporarily present in that other Contracting State for the primary purpose of --

\*          \*          \*          \*          \*          \*          \*

(iii) Studying or doing research as a recipient of a grant, allowance, or award from a governmental, religious, charitable, scientific, literary, or educational organization,

shall be exempt from tax by that other Contracting State with respect to amounts described in subparagraph (b) for a period not exceeding 5 taxable years from the date of his arrival in that other Contracting State.

(b) The amounts referred to in subparagraph (a) are--

\*          \*          \*          \*          \*          \*          \*

(ii) The grant, allowance, or award;

\*          \*          \*          \*          \*          \*          \*

(iv) Income from personal services performed in that other Contracting State in an amount not in excess of 2,000 United States dollars \* \* \* for any taxable year.

Respondent does not dispute that petitioner was a resident of Poland at the time that she became temporarily present in the United States, that petitioner became temporarily present in the United States for the primary purpose of conducting research for Washington Hospital Center, and that Washington Hospital Center is a charitable organization within the meaning of section 501(c)(3). Rather, respondent contends that the payments petitioner received did not constitute a "grant, allowance, or award" within the meaning of Article 18(1)(a)(iii) and therefore are not exempt from taxation by the United States under that article. Instead, respondent contends that those payments constitute compensation from employment that is taxable by the United States pursuant to Article 16[10] and the Governing Statutory Framework discussed in Part I. in the Discussion of this Summary Opinion. See supra pp. 10-11.

Both parties cite Sarkisov v. United States, 95 A.F.T.R. 2d (RIA) 2005-738, 2005-1 U.S. Tax Cas. (CCH) para. 50,218 (Fed. Cl. 2005), to support their

---

[10] Article 16, Dependent Personal Services, provides in pertinent part as follows:

> (1) Salaries, wages, and other similar remuneration derived by a resident of a Contracting State in respect of an employment shall be taxable only by that Contracting State unless the employment is exercised in the other Contracting State. If the employment is so exercised, such remuneration as is derived therefrom may be taxed by the other Contracting State.

respective positions. In that case the Court of Federal Claims had to decide whether Mr. Sarkisov, a Russian citizen, was "doing research as a recipient of a grant" according to the meaning and application of that phrase as it appeared in the U.S.-Russia tax treaty. The pertinent facts were as follows. Mr. Sarkisov entered the United States from Russia on a temporary basis on a J-1 visa to conduct research in physics for the University of Nevada. The university's funding came from several grants. Mr. Sarkisov was not the direct recipient of any of the grants, and none of them specified that the funding depended on Mr. Sarkisov's employment. The University of Nevada paid Mr. Sarkisov a salary and withheld Federal income tax. Mr. Sarkisov reported the salary payments but ultimately commenced a refund action against the United States in the Court of Federal Claims, contending that his remuneration was exempt under the treaty as grants for research.

In granting summary judgment in favor of the United States, the Court of Federal Claims held that Mr. Sarkisov's salary from the University of Nevada was not exempt from Federal income tax as a grant. In so holding, the court commented that the record was replete with references to Mr. Sarkisov as an employee of the university and that the record contained no references to him as

the recipient of a grant. Id. at 2005-741, 2005-1 U.S. Tax Cas. (CCH) para. 50,218, at 87,479.

In the instant case, the HSA that petitioner entered into with Washington Hospital Center provided that she would "earn a salary" and receive a variety of benefits, such as paid time off (including vacation, sick, or personal time), liability insurance, health and disability insurance, and family or medical leave of absence. The HSA further provided that petitioner would receive her salary in "equal installments on a biweekly basis". Receiving remuneration in the form of a salary and benefits such as these is generally indicative of an employment relationship. See Weber v. Commissioner, 103 T.C. 378, 393-394 (1994), aff'd, 60 F.3d 1104 (4th Cir. 1995).

In addition, the HSA provided that Washington Hospital Center could terminate petitioner "for any legitimate reason, which may include, without limitation, failure to maintain satisfactory academic progress, workplace misconduct, unprofessional behavior, [or] endangerment of the health or safety of others". The right to discharge a worker is also indicative of an employer-employee relationship. See Rodriguez v. Commissioner, T.C. Memo. 2012-286, at *20 (citing Weber v. Commissioner, 103 T.C. at 391).

In addition, Washington Hospital Center apparently regarded petitioner as an employee, as it issued her a Form W-2, for each of the years in issue reporting her remuneration as compensation. Also notable is the fact that each Form W-2 indicated that petitioner was an active participant in a retirement plan sponsored by Washington Hospital Center. Participating in a retirement plan is a further indicium of an employment relationship. Id. at *22. Moreover, Washington Hospital Center's Forms 990 reported no monetary grants or other assistance to individuals for its fiscal years covering the calendar years at issue in the instant case.

Petitioner, in contending that she received a grant and not compensation for her services, claims that certain donations to Washington Hospital Center were specifically "earmarked" for her salary. However, the record would not support such a finding. Rather, although petitioner's research may have helped to motivate the generosity of certain donors, the record shows only that donations were made to Washington Hospital Center for cancer research, and not that those donations were for petitioner's personal benefit or even that they were contingent on petitioner's participation in such research.

Petitioner also contends that as a research fellow she was not providing services to Washington Hospital Center. Instead, petitioner contends that her

position allowed her to gain "scientific expertise". The Court does not doubt that petitioner's professional development was meaningfully advanced by her work at Washington Hospital Center and that such work enhanced her career. However, the fact that an individual may gain experience and greater knowledge through work does not mean that the individual is not also providing a service to the organization for which the individual works or that compensation paid is not a quid pro quo for the service. See Adams v. Commissioner, 71 T.C. 477, 486-487 (1978); Proskey v. Commissioner, 51 T.C. 918, 925 (1969). Given that Washington Hospital Center has "[n]ationally respected programs in * * * cancer, diabetes and endocrinology", it would be hard to conclude that petitioner was not providing services to Washington Hospital Center or that her research activities were not of importance to it.

In summary, the Court holds that petitioner has failed to prove that she was the recipient of "a grant, allowance, or award" under Article 18(1)(a)(iii) of the Convention. See Rule 142(a). Accordingly, the remuneration that petitioner received during 2010 and 2011 from Washington Hospital is not exempt from taxation by the United States for those years under that article.

B. Article 17

The pertinent part of Article 17, Teachers, provides as follows:

(1) Where a resident of one of the Contracting States is invited by the Government of the other Contracting State, a political subdivision or a local authority thereof, or by a university or other recognized educational institution in that other Contracting State to come to that other Contracting State for a period not expected to exceed 2 years for the purpose of teaching or engaging in research, or both, at a university or other recognized educational institution and such resident comes to that other Contracting State primarily for such purpose, his income from personal services for teaching or research at such university or educational institution shall be exempt from tax by that other Contracting State for a period not exceeding 2 years from the date of his arrival in that other Contracting State.

The phrase "recognized educational institution" is not defined in the Convention.  In the instance of an undefined term, paragraph 2 of Article 3, General Definitions, of the Convention provides in relevant part:  "Any * * * term used in this Convention and not defined in this Convention shall, unless the context otherwise requires, have the meaning which it has under the laws of the Contracting State whose tax is being determined."

Both parties cite section 170 in an effort to define the term "recognized educational institution".  Section 170(b)(1)(A)(ii) defines "educational organization" as an organization "which normally maintains a regular faculty and curriculum and normally has a regularly enrolled body of pupils or students in attendance at the place where its educational activities are regularly carried on." Under section 1.170A-9(c)(1), Income Tax Regs., an "educational organization

does <u>not</u> include organizations engaged in both educational and noneducational activities <u>unless the latter are merely incidental to the educational activities</u>". (Emphasis added.)

Petitioner contends that the payments she received for the years in issue from Washington Hospital Center are exempt from U.S. taxation under Article 17 because Washington Hospital Center is a teaching hospital and therefore a "recognized educational institution". Although respondent might very well concede that Washington Hospital Center has medical education programs and styles itself an academic medical center, <u>see</u> https://medstarwashington.org/our-hospital, respondent nevertheless contends that petitioner fails to qualify for benefits under Article 17 because she did not establish that Washington Hospital Center is a "recognized educational institution". The Court agrees with respondent.

On the basis of the record in this case there is insufficient evidence to conclude that Washington Hospital Center is a " recognized educational institution". Indeed, the available evidence points in the other direction, i.e., that patient care is not "merely incidental to the educational activities". <u>See</u> sec. 1.170A-9(c)(1), Income Tax Regs. Rather, as documented by Washington Hospital Center's Form 990 and its mission statement, patient care is the

predominant purpose and activity of Washington Hospital Center. See Proskey v. Commissioner, 51 T.C. at 923 (a university hospital was not operated primarily as an institution for teaching and research in conjunction with the university's medical school but rather was primarily engaged in the care and treatment of patients); Bayley v. Commissioner, 35 T.C. 288, 293-294 (1960) (a teaching hospital did not qualify as an educational institution). Notable also is the fact that on its Forms 990 for all relevant years Washington Hospital Center expressly stated that it is not a school described in section 170(b)(1)(A)(ii). Accordingly, the Court holds that payments made to petitioner by Washington Hospital Center in 2010 and 2011 do not qualify for exemption from Federal income taxation under Article 17 of the Convention. See Rule 142(a).

## Conclusion

Finally, the Court has considered all of the arguments advanced by petitioner and, to the extent not expressly addressed above, concludes that those arguments are insufficient to support a decision in her favor.

To reflect the Court's disposition of the disputed issue, as well as respondent's concessions, <u>see</u> <u>supra</u> note 2,

<u>Decision will be entered</u>

<u>under Rule 155</u>.