153 T.C. No. 10

UNITED STATES TAX COURT

VITALY NIKOLAEVICH BATURIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14796-14.                    Filed December 18, 2019.

R issued P a notice of deficiency.  P filed a petition in which he contends that his wages are exempt from taxation pursuant to Article 18 of the Convention for the Avoidance of Double Taxation between the United States and the Russian Federation.  R contends that wages are by definition ineligible for the Article 18 exemption.

<u>Held</u>:  Wages may be eligible for the Article 18 exemption so long as they are payments similar to a grant or an allowance.

<u>Held</u>, <u>further</u>:  P's wages are payments similar to a grant or an allowance and are therefore exempt from Federal income tax.

Vitaly Nikolaevich Baturin, pro se.

<u>Matthew S. Reddington</u>, for respondent.

WELLS, <u>Judge</u>:  This is a proceeding for the redetermination of deficiencies in income tax for the 2010 and 2011 tax years of $11,088 and $11,141, respectively.[1]  After concessions,[2] the issue we must decide is whether the income reported on petitioner's Forms W-2, Wage and Tax Statement, is exempt from Federal income tax under the Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital, Russ.-U.S., June 17, 1992, S. Treaty Doc. No. 102-39 (1992) (U.S.-Russia Treaty).

---

[1]This Court removed the sec. 7463 small case "S" designation by order on April 13, 2015, thereby converting this matter to regular case status.  All section references herein are to the Internal Revenue Code of 1986, as amended, unless otherwise stated.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Respondent conceded a sec. 6662(a) penalty determined for the 2010 tax year.  Additionally, in the notice of deficiency respondent determined that petitioner received $19 of taxable interest in 2010.  Petitioner did not dispute this adjustment in his petition or at trial, and so it is conceded.  <u>See</u> Rule 34(b)(4).

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.[3] Petitioner resided in Virginia when he timely filed his petition.

Petitioner is a Russian citizen. At some point before 2007, and while he was working in South Korea, he was invited by the University of California, Los Angeles (UCLA) to participate in an exchange visitor program as a research scholar. Petitioner was issued an Exchange Visitor J-1 visa to participate in the program. He traveled to Mainz, Germany, to conduct his research. At some point, in petitioner's words, the UCLA program was "kind of canceled" and "the program was transferred to Jefferson Lab".

In a letter dated October 11, 2006 (2006 letter), Jefferson Science Associates, LLC (JSA), offered petitioner a two-year position as a 12 GeV Upgrade Research Scientist in the Physics Division at the Thomas Jefferson National Accelerator Facility (Jefferson Lab). JSA manages and operates the Jefferson Lab for the U.S. Department of Energy's Office of Science. JSA's work is primarily research for the public interest, not for private benefit. JSA personally

---

[3]Respondent filed a motion to substitute trial exhibits on June 2, 2015, which this Court granted on June 10, 2015, replacing Exhibits 1-J and 2-J with full copies of petitioner's tax returns.

invited petitioner to join the Jefferson Lab and perform his research; there was no application process.

The 2006 letter describes petitioner's position as including a salary of $75,000. The letter explains that petitioner would have an immediate supervisor and that "[a]s is the case for all JSA/Jefferson Lab employees", his "continued employment" was "contingent upon satisfactory performance and the continuing availability of funds and work." The letter also outlines requirements and benefits, such as eligibility to participate in JSA's employee benefits programs. Petitioner signed the offer letter on November 8, 2006. He did not sign a separate employment contract with JSA.

Jefferson Lab researches the structure of matter in the universe. It uses a particle accelerator to accelerate, or heat up, particles. Complex equipment called detectors record the event and use computers to analyze and construct models. The goal is to try to find new particles which establish the universe. Petitioner's role was to help construct the detectors for their upgrade from the 6 GeV accelerator to the 12 GeV accelerator. Petitioner understood that JSA characterized him as an employee because he used very complex equipment requiring a lot of training, security tests, security exams, and insurance. Without

"employment and following the rules of the company, of the institution, you cannot perform your research[]."

A responsible officer of JSA prepared a Form DS-2019, Certificate of Eligibility for Exchange Visitor J-1 Status, for petitioner. The responsible officer wrote:

> Transfer of this exchange visitor from program number P-1-100181 sponsored by University of California, Los Angeles to the program specified in item 2 is necessary or highly desirable and is in conformity with the objectives of the Mutual Education and Cultural Exchange Act of 1961, as amended.

The Form DS-2019 states JSA's program number as P-3-05511 and the "Official Description" as "Research Scholar; Short-term Scholar; Specialist". It refers to JSA as the "Program Sponsor" and to petitioner as an "Exchange Visitor". According to box 5, JSA's "Current Program Sponsor funds" were $75,000, the same amount stated as petitioner's salary in the 2006 letter. Petitioner was told that Jefferson Lab funded his program and set aside these funds for his maintenance before his arrival in the United States, pursuant to Department of State requirements. Petitioner did not receive financial support from anyone other than JSA. His exchange visitor term began January 1, 2007, and ended August 15, 2009.

Petitioner began his research at JSA on May 16, 2007. Two years later, in a letter dated May 12, 2009, JSA offered petitioner a "three-year extension" of his position to a term ending May 16, 2012. The letter reiterates that petitioner's "employment" is "contingent upon satisfactory performance and the continuing availability of funds and work." Petitioner signed the letter on May 13, 2009. On a second Form DS-2019, signed June 10, 2009, petitioner's exchange visitor status term was extended to December 31, 2011. The contents of this second Form DS-2019 are similar in all material respects to those of the first Form DS-2019, including the $75,000 in "funds".

In a letter dated September 20, 2011, JSA offered petitioner yet another "three-year extension" of his position to a term ending May 16, 2015. For this period JSA filed an H-1B Temporary Worker visa application, rather than another Form DS-2019. The Department of Homeland Security's Form I-797A, Notice of Action, with regard to petitioner describes the "case type" as "petition for a nonimmigrant worker." It states:

> The above petition and change of status have been approved. The status of the named foreign worker(s) in this classification is valid as indicated above. The foreign worker(s) can work for the petitioner but only as detailed in the petition for the period authorized * * * this employment authorization stems from the filing of this petition, separate employment authorization documentation is not required. Please contact the IRS with any questions about tax withholding.

Petitioner considered himself an employee of JSA. In correspondence dated April 1, 2015, a responsible officer of JSA wrote to confirm that petitioner was employed by JSA in a term position, first "as a Staff Scientist I on a J-1 Research Scholar Visa" and later on an H-1B Temporary Worker visa. The letter states that petitioner received "full salary and benefits as all other employees" during his entire tenure at JSA.

For each of the tax years 2010 and 2011, petitioner received a Form W-2 from JSA reporting amounts paid and Federal income tax withheld. The Forms W-2 show that JSA also withheld Social Security and Medicare taxes. Petitioner timely filed Form 1040NR, U.S. Nonresident Alien Income Tax Return, for the 2010 tax year, claiming among other things that his income was exempt under Article 18, section 1(b) and (c) of the U.S.-Russia Treaty. Petitioner received a refund for the 2010 tax year. Petitioner timely filed another Form 1040NR for the 2011 tax year once again claiming that his income was exempt under Article 18, section 1(b) and (c) of the U.S.-Russia Treaty. Petitioner did not receive a refund for the 2011 tax year.

On April 1, 2014, respondent issued a notice of deficiency to petitioner determining income tax deficiencies of $11,088 and $11,141 for tax years 2010 and 2011, respectively, and a section 6662(a) penalty of $2,218 for tax year 2010.

Although respondent has since conceded the penalty, it was determined that petitioner received compensation for services during tax years 2010 and 2011 and that his compensation was not exempt from taxation pursuant to the U.S.-Russia Treaty.

## OPINION

The issue we must decide is whether the income reported on petitioner's Forms W-2 is exempt from Federal income tax under the U.S.-Russia Treaty. The payments made to petitioner would ordinarily be taxable. See secs. 61(a)(1), 871(b), 864(b); Bhutta v. Commissioner, 145 T.C. 351, 360 (2015); sec. 1.61-2(a)(1), Income Tax Regs. The Internal Revenue Code, however, applies to a taxpayer with due regard to any treaty obligations of the United States which apply to the taxpayer. Sec. 894(a). Petitioner contends that the payments in issue are not taxable because they are subject to an exemption in Article 18 of the U.S.-Russia Treaty. Respondent contends that because the payments in issue are wages, they are by definition excluded from the Article 18 exemption.

The pertinent part of section 1 of Article 18, Students, Trainees and Researchers, of the U.S.-Russia Treaty provides:

> An individual who is a resident of a Contracting State at the beginning of his visit to the other Contracting State and who is temporarily present in that other State for the primary purpose of:

\*      \*      \*      \*      \*      \*      \*

        c) studying or doing research as a recipient of a grant, allowance, or other similar payments from a governmental, religious, charitable, scientific, literary, or educational organization,

        shall be exempt from tax by that other State with respect to payments from abroad for the purpose of his maintenance, education, study, research, or training, and with respect to the grant, allowance, or other similar payments.

Additionally, the exemption does not apply to income from research "undertaken not in the public interest but primarily for the private benefit of a specific person or persons." U.S.-Russia Treaty art. 18, sec. 3. Neither may the exemption for research "extend for a period exceeding five years." Id.

Petitioner was not a resident of the United States before taking up his position at Jefferson Labs.[4] He was temporarily present in the United States for

---

[4]The parties stipulated that petitioner was a nonresident alien during tax years 2010 and 2011. Therefore, respondent expressly waived any argument as to this requirement. Even if petitioner was a U.S. resident during these years, the U.S.-Russia Treaty extends special benefits to "visiting students, trainees, and researchers" under Article 18. Letter of Submittal, Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital, Russ.-U.S., June 17, 1992, S. Treaty Doc. No. 102-39, at VI (1992). The Technical Explanation states that a Russian researcher "is entitled to the benefits of * * * Article [18] even if such individual becomes a resident of the United States under the substantial presence test of Code section 7701(b)." U.S. Dep't of the Treasury, Technical Explanation of the Convention and Protocol Between the United States of America and the Russian Federatiton for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect

(continued...)

the purpose of doing research, and the payments in issue came from a scientific organization. The parties stipulated that petitioner's research was undertaken in the public interest, and the record supports that stipulation. As petitioner arrived in the United States in 2007, tax years 2010 and 2011 fall within the Article 18 five-year period. The sole remaining issue is whether the payments made to petitioner are a "grant, allowance, or other similar payment[]" under Article 18.

When interpreting a treaty, we begin with the text of the treaty and the context in which the words are used. Bhutta v. Commissioner, 145 T.C. at 360 (citing E. Airlines, Inc. v. Floyd, 499 U.S. 530, 534 (1991)). The plain meaning of the text of a treaty controls unless its effect is contrary to the intent or expectations of the signatories. Id. (citing Sanchez-Llamas v. Oregon, 548 U.S. 331, 346 (2006)). The role of the judiciary in interpreting tax treaty provisions is to decide their underlying intent or purpose. Estate of Silver v. Commissioner, 120 T.C. 430, 434 (2003); N.W. Life Assurance Co. of Can. v. Commissioner, 107 T.C. 363, 379 (1996). However, courts "may not read international treaties so broadly as to create unintended benefits or to reach parties not within the scope of a

---

[4](...continued)
to Taxes on Income and Capital Signed at Washington on June 17, 1992, Tax Treaties (CCH) para. 8043, at 163, 261. As Article 18 provides a five-year limit, it stands to reason that many a student, trainee, or researcher would technically become a U.S. resident during this period.

treaty's language." Int'l Bank for Reconstruction & Dev. v. District of Columbia, 171 F.3d 687, 691 (D.C. Cir. 1999).

The U.S.-Russia Treaty does not define the phrase "grant, allowance, or other similar payments". See U.S.-Russia Treaty arts. 3, 18. Article 3, section 2 of the U.S.-Russia Treaty provides that any term not defined in the treaty shall "have the meaning which it has under the laws of that State concerning the taxes to which this Convention applies." The Internal Revenue Code provides no definition of "grant" or "allowance", however. We must therefore interpret the phrase in context, taking into account the intent, purpose, or expectations of the signatories. See Bhutta v. Commissioner, 145 T.C. at 360; Estate of Silver v. Commissioner, 120 T.C. at 434.

The word "grant" has been broadly defined as an amount of funds given for a specific purpose. See American Heritage Dictionary 765 (4th ed. 2006). The Article 18 exemption from taxation was intended as "[s]pecial relief" to "visiting students, trainees, and researchers." Letter of Submittal, U.S.-Russia Treaty, S. Treaty Doc. No. 102-39, at VI. The exemption of payments made from abroad extends to those made for a wide range of purposes, including a visitor's "maintenance, education, study, research, or training". U.S.-Russia Treaty art. 18,

sec. 1.  Exempted payments made in the host country include, inter alia, those made in exchange for "doing research".  Id.

The special relief in Article 18 stands in contrast to the Internal Revenue Code exemption for scholarships and fellowship grants.  See sec. 117.  Section 117(a) provides that "[g]ross income does not include any amounts received as a qualified scholarship by an individual who is a candidate for a degree at an educational organization".  To be a "qualified scholarship" the amount received by the individual must be "a scholarship or fellowship grant" used only for "qualified tuition and related expenses", i.e., for tuition, fees, books, supplies, and equipment required for courses of instruction.  Sec. 117(b).  If we interpreted Article 18 to apply only to funds which are already exempted under section 117, it would be rendered superfluous and fail to provide any kind of special relief.  See Guardian Indus. Corp. v. Commissioner, 143 T.C. 1, 14-15 (2014).  Article 18 must there- fore provide a broader exemption than the one already provided for in section 117.

The special relief of Article 18 exists within the context of a treaty intended to foster greater exchange of scientific knowledge in the public sector.  The U.S- Russia Treaty preamble states that the United States and the Russian Federation desired "to develop and strengthen the economic, scientific, technical and cultural cooperation between both States".  This is similar to the preamble of the treaty's

predecessor, the Convention with the Union of Soviet Socialist Republics on Matters of Taxation (U.S.-U.S.S.R. Treaty), which stated that its goals were "to avoid double taxation and to promote the development of economic, scientific, technical and cultural cooperation between both States".  U.S.-U.S.S.R. Treaty, June 20, 1973, 27.1 U.S.T. 1.  The special relief of Article 18 is narrower than the special relief provided in the U.S.-U.S.S.R. Treaty, but it is still broader than that in both the U.S. Model Treaty and the OECD Model Treaty.  S. Exec. Rept. No. 103-17, at 40 (1993).  It is clear that the U.S.-Russia Treaty signatories placed great emphasis on facilitating the exchange of scientific research, and we read the phrase "grant, allowance, or other similar payments" in this context.

Article 18 provides special relief not only from taxation under the Internal Revenue Code, but also under the terms of the U.S.-Russia Treaty.  See secs. 61(a)(1), 871(b), 864(b); U.S.-Russia Treaty arts. 13 and 14; sec. 1.61-2(a)(1), Income Tax Regs.  Absent Article 18, payments for "doing research" would be taxable pursuant to Articles 13 or 14.  Article 13 deals with the general class of income from independent personal services, and identifies "scientific activities" as one of the many examples of taxable services.  U.S. Dep't of the Treasury, Technical Explanation of the Convention and Protocol Between the United States of America and the Russian Federatiton for the Avoidance of Double Taxation and

the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital Signed at Washington on June 17, 1992, Tax Treaties (CCH) para. 8043, at 163, 258. Article 14 deals with the general class of income from employment (dependent personal services). Id. Although Article 14 references as exceptions to its provisions only Articles 15 (Directors' Fees), 16 (Government Service), and 17 (Pensions), the Department of the Treasury Technical Explanation identifies Article 18 as an exception to both Articles 13 and 14. Id.

Respondent contends that wages are categorically excluded from Article 18. We disagree. Article 18 has no requirements for how the "grant, allowance, or other similar payments" must be characterized. Considering the intent to foster greater scientific research, we hold that Article 18 should be treated consistently as an exception to both Articles 13 and 14. Article 18 exempts from taxation payments made in exchange for the service of "doing research", whether the individual is paid as an independent contractor or an employee, so long as the payment is similar to a grant or an allowance. Whether an individual who otherwise meets the U.S.-Russia Treaty requirements receives a Form 1099 or a Form W-2, the question should be the same: whether he or she is the recipient of a grant, allowance, or similar payment.

A common difficulty faced by this Court and others is distinguishing between two situations. In the first, the foreign taxpayer is the recipient of a grant but an institution is the conduit for the grant application, award, and payment. See, e.g., Kiselev v. Commissioner, T.C. Summary Opinion 2018-2; Sarkisov v. United States, 95 A.F.T.R.2d (RIA) 2005-738, at 2005-741 (Fed. Cl. 2005) (discussing Lyashenko v. United States, 41 Fed. Cl. 626 (1998)). In the second situation, the institution, or a different individual within the institution, is the recipient of a grant and uses the funds to employ a foreign taxpayer. See, e.g., Dovzhenok v. Commissioner, T.C. Summary Opinion 2017-86; Klubo-Gwiezdzinska v. Commissioner, T.C. Summary Opinion 2017-45; Ratnikov v. Commissioner, T.C. Summary Opinion 2009-48; Sarkisov, 95 A.F.T.R.2d (RIA) 2005-738.

We conclude that the Article 18 exemption applies in the first situation but not in the second. A researcher's salary is not a grant "merely because his employer received grants to fund research in his area". Sarkisov, 95 A.F.T.R.2d (RIA) 2005-738, at 2005-740. On the other hand, a grant does not become a salary merely because an institution reports its payment on a Form W-2. Relevant facts in determining whether a grant, allowance, or other similar payment has been made directly or indirectly to an individual may include the nature of the

individual's work and position; whether an application for a grant or award features an individual's research or participation prominently; whether the funds issued were based upon that individual's research or participation; whether funds were earmarked specifically for an individual's maintenance; and the individual's immigration status. The characterization of payments is also a relevant fact; it is simply not determinative. An institution acting as a conduit may characterize payments as wages for its own purposes. If the institution issuing a Form W-2 is the conduit for payment and the individual otherwise meets the requirements of Article 18, indirect payment of a "grant, allowance, or other similar payment[]" is exempt from taxation.

We now turn to the facts in the instant case. We must decide whether, under all of the facts and circumstances, petitioner's wages were "similar payments" to a grant or allowance. In support of his position, petitioner testified as to why his position and research fell within Article 18, provided documentation from his employer, and presented the contrast between his J-1 visa paperwork and the H-1 visa paperwork. Respondent's counsel cross-examined petitioner.

Petitioner contends that his status as a J-1 visa holder is sufficient to prove that he is the recipient of a "grant, allowance, or similar payment[]". The relevant immigration statute provides:

> an alien having a residence in a foreign country which he has no
> intention of abandoning who is a bona fide student, scholar, trainee,
> teacher, professor, research assistant, specialist, or leader in a field of
> specialized knowledge or skill, or other person of similar description,
> who is coming temporarily to the United States as a participant in a
> program designated by the Director of the United States Information
> Agency, for the purpose of teaching, instructing or lecturing,
> studying, observing, conducting research, consulting, demonstrating
> special skills, or receiving training * * *

Mutual Educational and Cultural Exchange Act of 1961, Pub. L. No. 87-256, sec.

109(b), 75 Stat. at 534-535 (codified as amended at 8 U.S.C. sec. 1101(a)(15)(J)

(2006)). J-1 visa status in and of itself supports one element of Article 18: that

the individual be "temporarily present" in the country. It also may support a

finding that an individual with such a visa is "studying" or "doing research".

Petitioner, for example, is identified in his paperwork as a "Research Scholar", a

"Short-term Scholar", and a "Specialist". Petitioner was clearly engaging in the

kind of research that the U.S.-Russia Treaty signatories intended to include in the

Article 18 exemption.

Title 8 U.S.C. sec. 1101(a)(15)(J) does not, however, require that an

individual be the recipient of a grant, allowance, or other similar payments. The

issuance of a Form DS-2019, or the issuance of a J-1 visa, is not itself the issuance

of a grant. J-1 visa status is insufficient by itself to prove that an individual is

entitled to exclude his income under Article 18 of the U.S.-Russia Treaty.

Petitioner testified that his wages were similar to a grant because the funding was earmarked specifically for him. Petitioner was singled out and invited by JSA to perform his research. The funds appear to be issued on the basis of petitioner's specific participation. The nature of petitioner's research is also consistent with the type of research the U.S.-Russia Treaty signatories intended to foster. The immigration paperwork supports petitioner's understanding that his visa was transferred from one program to another. JSA did not offer petitioner an open-ended position or provide a separate employment contract. JSA offered petitioner a specific amount of money for a specific term. While JSA's correspondence stated that "continued employment" was "contingent upon satisfactory performance and the continuing availability of funds and work", there is no evidence in the record that JSA was entitled to rescind the promised payments for the specified term. The only "continued employment" we have in the record is the two-time extension and re-awarding of specified funds for petitioner to continue his research. Furthermore, these funds did not increase over time, as is common with salaries. Instead they appear to be re-issuances of a previous award.

Petitioner testified that his funding could not have been redirected to another scientist. Respondent presents no evidence to contradict petitioner's

testimony. Petitioner credibly testified that he moved his life and his family to the United States on the basis of a promise that the funds pledged to him had been set aside for his maintenance.

Petitioner distinguishes his situation from that in Sarkisov because he is specifically named in the Form DS-2019. In Sarkisov, 95 A.F.T.R.2d (RIA) 2005-738, at 2005-740, the court considered grants issued by "the Navy, the Department of Energy, and Cornell University", and found that "[n]one of the grants was directed to Mr. Sarkisov." In the instant case we have no equivalent list of grants serving to either include or exclude petitioner. The correspondence from JSA all refers to petitioner by name. The Form DS-2019 is not evidence of the issuance of a grant, but it stands in contrast to the immigration paperwork for tax years 2012 and later, which discusses the requirement of "tax withholding" for petitioner because he is a "worker".

Respondent contends only that wages are categorically ineligible for Article 18 exemption. We find that wages may be eligible for exemption so long as they are similar to a grant or allowance. Although we do not have a robust record before us, taken as a whole the facts in the record lead us to conclude that petitioner is the recipient of a grant, allowance, or similar payments. Petitioner's

wages are therefore exempt from Federal income tax pursuant to Article 18 of the U.S.-Russia Treaty.

Accordingly,

<u>Decision will be entered under</u>

<u>Rule 155</u>.